UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARY LARKIN,<br><br>                     Plaintiff,<br>vs.<br><br>**TIAA-CREF INDIVIDUAL &**<br>**INSTITUTIONAL SERVICES, LLC,**<br>**TEACHERS INSURANCE AND ANNUITY**<br>**ASSOCIATION OF AMERICA AND**<br>**COLLEGE RETIREMENT EQUITIES**<br>**FUND,**<br><br>                     Defendants. | Civil No.<br><br><br>**COMPLAINT**<br>**and**<br>**JURY DEMAND** |

Plaintiff, Mary Larkin ("Ms. Larkin"), whose address is 175 Newlins Road West, Apartment #203, Easton, Pennsylvania 18040, by her attorneys the Weiner Law Group LLP, by way of Complaint against the defendants, and with knowledge as to their own acts, and upon information and belief as to all others, states and alleges as follows:

**INTRODUCTION**

1.      Ms. Larkin brings suit against the defendants for claims arising out of their failure and refusal to honor her rights as beneficiary under a 403(b) retirement plan sponsored by Iona College (the "Plan"). Iona College employed her late brother, and Plan participant, James Joseph Lonergan.

2.      Mr. Lonergan, who passed away on August 3, 2017, designated Ms. Larkin as his beneficiary under the Plan. Defendants notified her of her beneficiary status, and ever since, have interfered with her efforts to recover those benefits despite her having completed all paperwork and having done everything else they have required of her.

3.      Defendants now have begun actively to engage in efforts to cause an unidentified third party to challenge her beneficiary status under the Plan; they have failed to provide pertinent

communications and Plan documents to Ms. Larkin; and they otherwise are believed to be engaged in self-dealing and/or a third party conspiracy at the expense of Ms. Larkin, who faces (a) loss of the benefits/funds, (b) adverse tax consequences, and (c) prospective third party claims as a result.

4.  Defendants' activities violate their obligations to Ms. Larkin as fiduciaries under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA").

5.  To the extent the Plan is not governed by ERISA, or to the extent supplemental legal principles apply, defendants' actions violate Ms. Larkin's statutory and common law rights under the laws of New York, and entitle her to recovery of all appropriate damages, including punitive damages.

## THE PARTIES

6.  The plaintiff is an individual who is a resident and citizen of the Commonwealth of Pennsylvania.

7.  Defendant TIAA-CREF Individual & Institutional Services, LLC, is a limited liability company with its principal place of business of 750 Third Avenue, New York, New York 10017. Its members presently are unknown, but are believed to be citizens of states other than Pennsylvania, since its office is in Manhattan and its members unlikely would be Pennsylvania residents given the lack of proximity between the two locations. Instead, on information and belief, its members are citizens of the New York and/or New Jersey and/or Connecticut.

8.  Defendant Teachers Insurance and Annuity Association of America and College Retirement Equities Fund, is an entity domiciled in and, upon information and belief, formed under the laws of New York, with its principal place of business at 750 Third Avenue, New York, New York 10017.

9.  The defendants hereafter are identified together as "TIAA" unless otherwise noted.

2

**JURISDICTION AND VENUE**

10. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1331, as allegations herein concern federal questions arising under ERISA.

11. Jurisdiction also is appropriate pursuant to 28 U.S.C. § 1332(a), as the controversy is between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

12. Supplemental jurisdiction also is appropriate as to claims not arising under the statutes of the United States, since they are related to such claims as contemplated by 28 U.S.C. § 1367.

13. Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2), since a substantial part of the events giving rise to the claim occurred in the Southern District of New York, where the Plan is administered by TIAA, and/or where its fiduciary activities have occurred.

**GENERAL ALLEGATIONS**

14. Mr. Lonergan was Ms. Larkin's brother, and he passed away August 3, 2017. He had no known living relatives other than Ms. Larkin and her progeny.

15. Pursuant to the Plan, Mr. Lonergan had a contract with Teachers Insurance Annuity Association, Number B1249420, and a certificate with the College Retirement Equities Fund, Number Q1249427. Both the contract and certificate related to retirement contributions, the full balance of which was owned by Mr. Lonergan while alive. The total value of the contract and certificate as of his date of death was $797,329.03.

16. Upon information and belief, the Plan is governed by ERISA, and TIAA is a fiduciary in keeping with ERISA or, if the Plan is not governed by ERISA, pursuant to New York common law and/or statutory law.

17. In its fiduciary capacity, TIAA is obligated to act in Ms. Larkin's best interests since she is the beneficiary under the Plan and is entitled to distribution of all Plan proceeds in the wake of Mr. Lonergan's passing.

18. On August 17, 2017, TIAA forwarded Ms. Larkin a letter, at her former address in Florida, advising her that she was the named beneficiary. The letter was written by Clive Wart ("Wart") of TIAA's "Beneficiary Relationship Team".

19. Ms. Larkin is in fact the sole named beneficiary on the subject Plan certificate and contract, and is entitled to all proceeds therefrom.

20. On September 29, 2017, a law firm retained by Ms. Larkin, an octogenarian, for purposes of assisting her in making the claim for benefits, forwarded a letter to Wart enclosing Mr. Lonergan's Certificate of Death, and advising that it was representing Ms. Larkin's interests. Mr. Wart was specifically instructed that all communications from TIAA to Ms. Larkin were to be directed to the law firm.

21. TIAA thereafter was obligated as fiduciary to comply with Ms. Larkin's wishes, as provided to Wart by her legal counsel.

22. On October 2, 2017, Wart responded to the communication and advised that in order for Ms. Larkin's attorneys to communicate with TIAA, they would need to receive a Power of Attorney or some other "letter of authorization" from Ms. Larkin. Wart then advised he wished to speak directly with Ms. Larkin.

23. Upon information and belief, Wart wished to speak with Ms. Larkin for the purpose of attempting to consult with her outside the presence of her legal counsel so that he could convince her to maintain her benefit amount with TIAA, rather than transferring it out of TIAA.

24. Upon information and belief, TIAA actively encouraged its employees dealing with beneficiaries to attempt to halt the distribution of funds out of TIAA and into the accounts of other

4

asset management firms and financial institutions as a matter of course, without regard to the fiduciary duties it owed to beneficiaries, including Ms. Larkin.

25. Also on October 2, 2017, in response to Wart's communication, a completed Power of Attorney was forwarded to him which appointed attorneys from the law firm representing Ms. Larkin as attorneys-in-fact.

26. On October 9, 2017, TIAA acknowledged that Ms. Larkin's lawyers (the "Firm") had full power of attorney/fiduciary rights for Ms. Larkin, and that TIAA should be cooperate with them "as maximally as possible."

27. On October 12, 2017, the Firm sent Wart a letter advising that it was engaging in communications with a financial advisor on Ms. Larkin's behalf, and that it was important for tax purposes that matters with TIAA be resolved, so that an appropriate distribution could be taken by Ms. Larkin before December 31, 2017.

28. In response to such letter, Wart insisted that the most efficient way to discuss the matter was to have a phone conversation with him which could be scheduled at an unspecified date in the future.

29. Upon information and belief, Wart's desire to have the phone conversation at a future date was based on TIAA's unwritten policy to delay the time for distribution of such money for its own financial benefit, and/or that of employees such as Wart, who was acting as TIAA's fully authorized agent.

30. On October 13, 2017, Wart again urged a future phone conversation about the subject funds as being "the most efficient way to discuss this case." Such communication was, upon information and belief, in keeping with TIAA's efforts to maintain the funds for its own use for as long a period as possible, contrary to the best interests and directions of Ms. Larkin.

5

31. The Firm provided additional account documents needed to complete a transfer of funds to Ms. Larkin's designated account, on October 25, 2017; they were forwarded to Wart, with instructions that he advise what else needed to be done to complete a wire transfer to such account without delay.

32. On October 26, 2017, continuing his pattern of being uncooperative with the Firm as agent for Larkin and, upon information and belief, in keeping with TIAA's self-dealing policies, at its direction, and/or as its agent, Wart responded once again by providing his prior emails suggesting that there be a phone conference scheduled for some future date to discuss the transfer of funds.

33. On November 7, 2017, Beneficiary Acceptance forms for Ms. Larkin were completed and emailed to Wart, which were supposed to be the last documents needed to effect the transfer of funds to Ms. Larkin's designated account. In said communication, Wart was asked what else needed to be done to effect the transfer of all funds. In response, Mr. Wart took issue with the forms themselves, asserting that they had to be mailed. He further asserted that the notarization of Ms. Larkin's signature had to include a notary's seal.

34. Since the forms had been executed in New Jersey, where an attorney legally may act as a notary public and does not have a notary seal, the forms were in proper order according to the jurisdiction in which they were executed. Thus, the Firm informed Wart that New Jersey's statutory requirements for notarization had been met, and asked that he confirm that TIAA would comply with the law.

35. In response, despite being provided evidence of legal compliance from the beneficiary, to whom TIAA owed fiduciary obligations, Wart again noted that "TIAA-CREF requires a notarial seal on all notarized signatures."

36. The Firm again responded, this time requesting that TIAA legal counsel contact the Firm to explain why TIAA was refusing to comply with New Jersey law. Wart responded again that it

6

is "set in stone for TIAA" that they require a notarial seal. Once again the Firm replied, asking for an explanation as to why TIAA would not comply with New Jersey law. Finally, in response, Wart yielded and advised that he had "pushed it through our law department – and they agreed with you in this particular instance."

37. Upon information and belief, Wart was being untruthful in all such communications regarding the notarial requirements of TIAA and about his communication with the law department.

38. If such communications were made with the legal department as Wart had represented, they were made on Ms. Larkin's behalf by Wart in his capacity as fiduciary agent, thus causing Wart and TIAA legal counsel to be duty-bound to Ms. Larkin to engage in honest and good-faith communications for her sole benefit.

39. On November 8, 2017, the fully completed original Beneficiary Acceptance forms were sent by overnight courier to TIAA, with copy to Mr. Wart, such that they were received November 9, 2017.

40. On November 9, 2017, Wart wrote an email to the Firm advising of a purported beneficiary "contest" as to Ms. Larkin's claim, which was being reviewed and which would be updated within ten (10) days.

41. Upon information and belief, there was no contest at all at such time, but rather, the "contest" was a fiction created to give TIAA additional reason to hold onto the funds for its own benefit, or for that of its authorized agent and/or others, or else was undertaken in conspiracy with a third party for purposes of interfering with Ms. Larkin's rights, in violation of TIAA's fiduciary duties to her.

42. The next day, November 10, 2017, the Firm forwarded Wart a letter advising that all information related to such purported contest claim should immediately be provided to the Firm so that plaintiff's rights could be protected.

7

43. In an email response thereto, Wart responded that the Firm's email was received and forwarded to appropriate parties at TIAA.

44. Still having received no response, on November 20, 2017, a follow-up email was sent to Wart again requesting all pertinent information related to the purported contest.

45. Thereafter, TIAA employee Monica Heredia ("Heredia") responded to the Firm, and advised that Wart was on vacation and that she would look into the Firm's questions while he was away. The Firm responded by demanding that she provide the information previously sought. In response, Heredia advised that she was waiting for the legal team to respond and was aware that settlement of the account was suspended pending instructions from the legal team. She noted also that specific information was requested regarding the purported claim document and the name of the individual contesting the claim.

46. On November 29, 2017, having heard nothing, another follow-up email was sent to Heredia, with a copy to Wart, noting that under NYCLS EPT L §13-3.2, Ms. Larkin was within her rights as designated beneficiary immediately to receive the money; and that all information about the putative "contest" had to be provided to her, including the identity of the challenger to her claim and the basis of such claim so that her rights could be protected. It was further requested that TIAA's legal department contact the Firm directly.

47. At some point between November 27 and December 1, 2017, TIAA forwarded a letter directly to Mary Larkin and not the Firm's address as directed -- advising that a contest supposedly had been made to her claim, one which TIAA "understood" resulted in a temporary restraining order being issued. Such letter was send in direct violation by TIAA of its fiduciary responsibilities, given its acknowledgment that the Firm had power of attorney, that TIAA was to cooperate with the Firm as directed, and that Ms. Larkin did not live in New Jersey.

48. Upon learning that a letter had been sent to New Jersey, which was provided to Ms. Larkin by the recipient, the Firm forwarded an email directly to Wart inquiring as to why such communication was sent directly to Ms. Larkin's attention, and not to the Firm. The Firm noted that such communication constituted a violation of Ms. Larkin's rights, and that despite numerous requests for information related to the purported claim, nothing had been provided. Thus, the Firm demanded that absent an actual order being in hand which restrained TIAA from doing so, all funds from Mr. Lonergan being held by TIAA legally belonged to Ms. Larkin, and they should immediately be transferred pursuant to detailed written instructions previously provided to TIAA by the Firm.

49. A follow-up email was sent to Wart on December 8, 2017, advising that the failures to respond to the Firm's inquiries for information were ongoing and violated Ms. Larkin's rights. The Firm again demanded that all funds immediately be transferred to Ms. Larkin's designated account since there was no evidence at all of an actual claim being made to dispute her beneficiary designation.

50. On December 10, 2017, a Sunday, Heredia contacted the Firm by email, and advised that on December 7, 2017, TIAA had contacted the purported challenger to the beneficiary designation and essentially invited such purported person or entity to file a claim with Iona College as the Plan Administrator. She further advised that TIAA would wait to hear from Iona College as to whether funds should continue being held by TIAA. Such invitation and communication was made contrary to TIAA's fiduciary duties owed to Ms. Larkin as beneficiary, and confirmed that no legally cognizable challenge had been made to Ms. Larkin's beneficiary designation.

51. The Firm thereafter requested that Ms. Heredia confirm that no temporary restraining order was in place. She never responded.

9

52.     As beneficiary, Ms. Larkin is and remains absolutely entitled to all communications made by TIAA as fiduciary both internally and to any and all third parties related to her right to recovery of Plan benefits.

53.     Upon information and belief, TIAA is or may be acting in conspiracy with third parties for purposes of interfering with Ms. Larkin's rights as beneficiary under the Plan, which individuals and/or entities are as yet undisclosed.

54.     Ms. Larkin still has not received any of the benefits to which she is entitled, and her rights continue being violated by TIAA, which has not provided her any of the information requested, including Plan documents.  Ms. Larkin stands to suffer additional damages if she is unable to access the funds to which she is entitled before December 31, 2017, since adverse tax consequences shall result therefrom.

**FIRST COUNT**
**(Breach of Fiduciary Duty Under ERISA)**

55.     Ms. Larkin repeats and reasserts each and every allegation above, as if fully set forth herein at length.

56.     Ms. Larkin is a beneficiary under the Plan, thus conferring standing on her pursuant to ERISA, including, without limitation, § 502 thereof.

57.     TIAA is an ERISA fiduciary and exercises requisite authority and/or control over the assets in question and/or undertakes other administrative functions under the Plan.

58.     Upon information and belief, TIAA has acknowledged in writing to Iona College that it is a fiduciary under the Plan.

59.     In such capacity, TIAA has breached its fiduciary duties owed to Ms. Larkin by, *inter alia*, failing and refusing to deliver funds owed to her as beneficiary; and/or providing false information to her and the Firm (the Firm acting as her duly authorized agent and/or attorney-in-fact)

10

about the requirements needed to obtain such funds; and/or failing to communicate with her in the manner directed; and/or withholding material information from her; and/or by self-dealing; and/or by attempting to interfere with Ms. Larkin's rights by inviting a third-party claim challenging such rights, among other things.

60. By its actions, TIAA has failed to act solely in the interests of Ms. Larkin; has failed to act in a manner exhibiting the care, skill, prudence and diligence required under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; has failed to act with loyalty to its beneficiary and/or has failed to act in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with the provisions of ERISA.

61. TIAA has thus failed to act in keeping with an unwavering duty to make decisions with single-minded devotion to Ms. Larkin, as beneficiary, and in so doing has failed to act as a prudent person would act in a similar situation.

62. Further, TIAA has acted in its own interests and/or in the interests of its authorized agents and/or representatives including, without limitation, Wart and Heredia, and for its or their own account.

63. TIAA likewise has acted in transactions involving the Plan in a manner contrary to Ms. Larkin's rights, but rather, in favor of a person or persons, or entity or entities whose interests are adverse to the interests Ms. Larkin.

64. The actions aforesaid all, or in part, were undertaken in breach of defendants' fiduciary duties owed to Ms. Larkin, who continues being damaged thereby.

WHEREFORE, Ms. Larkin demands judgment in her favor, and against the defendants to the full extent of law as follows:

    A. Compensatory damages to the extend applicable and applicable by law;

    B.  Interest as allowed by law;

    C.  Restitution to the extent applicable and permissible by law;

    D.  An Order enforcing Ms. Larkin's rights under the Plan;

    E.  An Order enjoining TIAA from violating any provision of ERISA;

    F.  Awarding any and all appropriate equitable relief;

    G.  An award of civil penalties to the extent applicable;

    H.  An award of all costs of suit including, without limitation, legal fees and costs;

    I.  Such other and further relief as this Court deems equitable and just.

## SECOND COUNT
### (Breach of Fiduciary Duty)

65. Ms. Larkin repeats and reasserts each and every allegation above, as if fully set forth herein at length.

66. To the extent ERISA does not apply to the Plan, TIAA owed fiduciary duties to Ms. Larkin and breached same for the reasons expressed above, thus causing her damage.

67. As fiduciary, TIAA was duty-bound immediately to respond, transfer funds, and be fully forthcoming with Ms. Larkin through the Firm. In failing to so act, TIAA damaged, and continues to damage, Ms. Larkin.

WHEREFORE, Ms. Larkin demands judgment in her favor, and against defendants, jointly and severally, to the full extent of law, as follows:

    A.  Compensatory Damages;

    B.  Punitive Damages;

    C.  Immediate disclosure of all information demanded;

    D.  Interest as allowed by law;

    E.  An award of all costs of suit, including reasonable attorneys' fees;

  F. Such other and further relief as this Court deems equitable and just.

## THIRD COUNT
### (Conversion)

68. Ms. Larkin repeats and reasserts each and every allegation above, as if fully set forth herein at length.

69. By their actions, defendants have intentionally and wrongfully withheld funds rightfully belonging to Ms. Larkin; have wrongfully exercised dominion and control over same; and have converted such funds to their own use, in violation of her rights, thus causing her damage.

WHEREFORE, Ms. Larkin demands judgment in her favor, and against defendants, jointly and severally, to the full extent of law, as follows:

  A. Compensatory Damages;

  B. Punitive Damages;

  C. Interest as allowed by law;

  D. An award of all costs of suit, including reasonable attorneys' fees;

  E. Such other and further relief as this Court deems equitable and just.

## FOURTH COUNT
### (Tortious Interference with Economic Advantage)

70. Ms. Larkin repeats and reasserts each and every allegation above as if fully set forth herein at length.

71. Defendants know that Ms. Larkin is entitled to receipt of the subject funds pursuant to her beneficiary status under NYCLP EPTL §13-3.2.

72. Despite such knowledge, defendants have interfered with such rights by coordinating with third parties and with individuals within TIAA to restrain and/or prevent her recovery of such funds, thus causing her damage.

WHEREFORE, Ms. Larkin demands judgment in her favor, and against defendants, jointly and severally, to the full extent of law, as follows:

    A. Compensatory Damages;

    B. Punitive Damages;

    C. Interest as allowed by law;

    D. An award of all costs of suit, including reasonable attorneys' fees;

    E. Such other and further relief as this Court deems equitable and just.

## FIFTH COUNT
### (Third Party Beneficiary)

73. Ms. Larkin repeats and reasserts each and every allegation above as if fully set forth herein at length.

74. Ms. Larkin is an intended and express third-party beneficiary pursuant to the contract between the deceased Mr. Lonergan and TIAA.

75. Ms. Larkin is entitled to all benefits under such contract, which are being withheld by defendants, thus causing her damage.

WHEREFORE, Ms. Larkin demands judgment in her favor, and against defendants, jointly and severally to the full extent of law, as follows:

    A. Compensatory Damages;

    B. Interest as allowed by law;

    C. An award of all costs of suit, including reasonable attorneys' fees;

    D. Such other and further relief as this Court deems equitable and just.

## SIXTH COUNT
### (Good Faith and Fair Dealing)

76. Ms. Larkin repeats and reasserts each and every allegation above, as if fully set forth herein at length.

77. A duty of good faith and fair dealing, express or implied, existed in defendants' contract with Mr. Lonergan, and in their conduct in keeping with same. That duty is equally owed to those in privity with Mr. Lonergan, *i.e.,* Ms. Larkin.

78. By their actions, defendants have breached such duties of good faith and fair dealing as applied to Ms. Larkin's rights thereunder, which have caused her damage.

79. In addition to damages, full justice also requires specific performance due to the unique circumstances here.

WHEREFORE, Ms. Larkin demands judgment in her favor, and against defendants, jointly and severally, to the full extent of law, as follows:

    A. Compensatory Damages;

    B. Punitive Damages;

    C. Specific performance.

    D. Interest as allowed by law;

    E. An award of all costs of suit, including reasonable attorneys' fees;

    F. Such other and further relief as this Court deems equitable and just.

### SEVENTH COUNT
**(Fraudulent Misrepresentation)**

80. Ms. Larkin repeats and reasserts each and every allegation above as if fully set forth herein.

81. TIAA, though its authorized agents, knowingly made materially false statements and knowingly omitted material facts for purposes of gaining an economic advantage for itself and/or its authorized agents and/or third parties at Ms. Larkin's expense.

82. Such false statements and/or misrepresentations were material and were successfully designed to cause reliance on Ms. Larkin and/or the Firm on her behalf, and to her pecuniary disadvantage, upon which reasonable reliance was placed, thus causing her damage.

WHEREFORE, Ms. Larkin demands judgment in her favor, and against defendants, jointly and severally, to the full extent of law, as follows:

A. Compensatory Damages;

B. Punitive Damages;

C. Interest as allowed by law;

D. An award of all costs of suit, including reasonable attorneys' fees;

E. Such other and further relief as this Court deems equitable and just.

## EIGHTH COUNT
### (Declaratory Judgment)

83. Ms. Larkin repeats and reasserts each and every allegation above as if fully set forth herein.

84. Ms. Larkin and TIAA are involved in a controversy regarding their rights and responsibilities as related to the Plan.

85. Ms. Larkin is an interested party in such controversy.

86. Declaration of such rights and responsibilities pursuant to 28 U.S.C.S. § 2201 is appropriate, as the aforesaid allegations set forth facts sufficient to provide basis for declaring the rights and legal relations of the parties to this action so as to settle those rights and legal relations.

87. Ms. Larkin seeks a declaration of her rights with respect to the Plan and her status as beneficiary under Mr. Lonergan's 403(b) account.

88. Because irreparable harm has and will continue to befall Ms. Larkin if the rights and legal relations of the parties are not settled, she seeks an injunction against TIAA from taking any further actions to further interference with her rights.

WHEREFORE, Ms. Larkin demands judgment in her favor, and against defendants, to the full extent of law, as follows:

    A. Declaring that TIAA's actions violated her rights as beneficiary, and contrary to their fiduciary obligations;

    B. Compelling the immediate transfer of all funds being held by TIAA on account of Mr. Lonergan and/or Ms. Larkin, as beneficiary;

    B. Restraining and enjoining the defendants, and each of them, from taking any further action interfering with her rights as beneficiary, including inviting and/or aiding in any way such interference by third parties;

    C. Compelling TIAA to produce all third party communications and internal communications, including but not limited to those with its legal department, regarding or in any way arising out of Mr. Lonergan's death and/or Ms. Larkin's claim;

    D. Awarding all costs of suit, including reasonable attorneys' fees and expert costs;

    E. Awarding such other and further declaratory relief as is equitable and just.

## JURY DEMAND

Plaintiffs demand a trial by a jury of twelve persons on all counts, claims and issues so triable.

                                        Respectfully submitted,

                                        **WEINER LAW GROUP LLP**

                                        By:  <u>s/ Ronald A. Berutti</u>
                                                  Ronald A. Berutti
                                                  A Member of the Firm
                                                  90 Broad Street, Suite 1802
                                                  New York, New York 1004-2627
                                                  (973) 403-1100
                                                  rberutti@weinerlawgroup.com

Dated:  New York, New York
          December 15, 2017

1325669_1